<u>NOT FOR PUBLICATION</u>

UNITED STATES DISTRICT COURT
DISTRICT OF NEW JERSEY

| | |
|---|---|
| LILSHAUN GLASS and BRUCE GLASS,<br><br>Plaintiffs,<br><br>v.<br><br>WAL-MART STORES EAST, L.P., *et al.*,<br><br>Defendants. | Civil Action No. 19-19124 (GC) (TJB)<br><br>**MEMORANDUM OPINION** |

**CASTNER, District Judge:**

**THIS MATTER** comes before the Court upon the Motion for Summary Judgment brought by Defendant Wal-Mart Stores East, L.P., asserting that Plaintiffs Lilshaun and Bruce Glass have failed to establish a *prima facie* case of negligence arising from a slip-and-fall incident in May 2018 at Defendant's store. (*See* ECF No. 24.) The Court has carefully considered the parties' submissions and decides the motion without oral argument pursuant to Federal Rule of Civil Procedure ("Rule") 78 and Local Civil Rule 78.1. For the reasons stated herein, and other good cause shown, Defendant's Motion for Summary Judgment is **DENIED**.

**I.    BACKGROUND**[1]

In this negligence action, Plaintiffs seek damages for injuries that resulted from a slip-and-fall incident that occurred on May 19, 2018, at a Walmart store in Watchung, New Jersey. While

---

[1]    On a motion for summary judgment, the Court "draw[s] all reasonable inferences from the underlying facts in the light most favorable to the nonmoving party." *Jaffal v. Dir. Newark New Jersey Field Off. Immigr. & Customs Enf't*, 23 F. 4th 275, 281 (3d Cir. 2022) (quoting *Bryan v. United States*, 913 F.3d 356, 361 n.10 (3d Cir. 2019)).

shopping on that rainy day, Lilshaun Glass slipped on a wet substance in one of the store's aisles, injuring her ankle and foot. (*See* ECF No. 25 at 5-7.[2]) Bruce Glass, Ms. Glass's husband, claims loss of consortium. (ECF No. 1-1 at 7-8.) Defendant now moves for summary judgment, arguing that Plaintiffs have failed to demonstrate that Defendant had actual or constructive notice of the alleged hazardous condition that caused the incident. (ECF No. 24-1 at 11-18.)

### A.   Procedural History

On September 17, 2019, Plaintiffs filed the operative Complaint in the Superior Court of New Jersey, Law Division, Union County. (ECF No. 1-1.) Defendant removed the action to this Court on October 18, 2019. (ECF No. 1.) The matter was subsequently referred to arbitration. (ECF No. 15.) Following arbitration, Plaintiffs requested a trial *de novo*. (ECF No. 17.) On May 27, 2022, Defendant moved for summary judgment, asking the Court to dismiss the Complaint with prejudice. (ECF Nos. 24 & 24-13.) Plaintiffs opposed the motion, and Defendant replied. (ECF Nos. 25 & 26.)

### B.   Undisputed Facts[3]

Defendant operates a retail Walmart store in Watchung, New Jersey. (SMF & RSMF ¶ 1.) On May 19, 2018, a rainy day, Ms. Glass visited Defendant's store to shop. (SMF & RSMF ¶¶ 2-3; PSMF & DRSMF ¶ 4.) Shortly after entering the store, Ms. Glass slipped and fell at the end of an aisle, which was located between the checkout registers and other store aisles, approximately 50 feet from the main entrance. (SMF & RSMF ¶¶ 4-5; PSMF & DRSMF ¶¶ 1-2.) Ms. Glass testified that "it was wet on the floor," but she was unsure as to the substance or source of the wetness. (ECF No.

---

[2]   Page numbers for record cites (*i.e.*, "ECF Nos.") refer to the page numbers stamped by the Court's e-filing system and not the internal pagination of the parties. For citations to transcripts, however, the Court refers to the page and line numbers paginated by the reporter.

[3]   Defendant's Statement of Material Facts ("SMF") is at ECF No. 24-2; Plaintiffs' Response to Defendant's Statement of Material Facts ("RSMF") is at ECF No. 25 at 8-15; Plaintiffs' Additional Statement of Material Facts ("PSMF") is at ECF No. 25 at 16-17; and Defendant's Response to Plaintiffs' Additional Statement of Material Facts ("DRSMF") is at ECF No. 26-1.

24-4 at 14:23-15:3.) Ms. Glass also observed footprints and cart track marks in the wet area after falling to the floor. (*Id.* at 17:3-14.)

Following Ms. Glass's fall, another customer helped her back to her feet.[4] (SMF & RSMF ¶ 9.) Ms. Glass left the store without completing her shopping. (SMF & RSMF ¶ 10.) She did not report the incident to any Walmart employee prior to exiting the store. (SMF & RSMF ¶ 10.) Approximately one month after the incident, Ms. Glass returned to the store to report that she had fallen and hurt herself. (SMF & RSMF ¶ 11.)

C.     **Expert Reports and Testimony**

Plaintiffs' liability expert, Charles J. Witczak III, P.E., made a site visit to the Walmart store on October 29, 2020, more than two years after the incident at issue. (SMF & RSMF ¶ 15.) Based on his observations at that time and his review of certain materials produced in discovery, Witczak authored an expert report and supplemental report regarding the condition of the store and accident location. (*See* ECF Nos. 24-5 & 24-6.) Witczak was also deposed on February 2, 2022. (ECF No. 24-7.)

According to Witczak, "[i]nspection of the floor in front of the check out registers at the location of [Ms. Glass's] accident consisted of a smooth, polished 12" x 12" vinyl composition tile (VCT) surface which will become extremely slippery when exposed to liquids." (ECF No. 24-5 at 3.) Witczak noted that "several potential water sources were found at the general area of the accident location," including "a main entrance to the store 3 aisles away where outside water could be tracked into the store by pedestrians and shopping carts, and leaks in the roof that would allow for rainfall to enter the structure and drip onto the walking surface." (*Id.*) Witczak explained that "[t]he steel truss

---

[4]     Ms. Glass described this other customer as a Caucasian woman with a Westfield Animal Hospital badge. (ECF No. 24-4 at 20:6–7.) However, for purposes of this lawsuit, Ms. Glass did not otherwise identify that customer. (*Id.* at 20:3-4.)

3

rafters of the roof system directly above the location of [Ms. Glass's] fall showed signs of staining consistent with water damage from leaks in the roof or piping systems." (*Id.*)

Witczak also witnessed actual leaking from the roof trusses within the store at the time of his inspection. (*Id.*) Such leaks were a documented problem at the store and often required repair. (*Id.*) Invoices from Lowslope Solutions indicate that between March 2017 and August 2018, "a roof repair contractor was called to the store 7 different times by the [store's] staff to correct leaking in the building's roof system." (*Id.* at 3-4.)

At his deposition, Witczak testified that, while he observed a roof leak approximately 50 feet from the location of Ms. Glass's incident on the day of his site visit, he did not personally observe a roof leak over the area where Ms. Glass had fallen. (ECF No. 24-7 at 46:3-12.) Witczak did not provide any opinion as to how long the wet condition existed on the day of Ms. Glass's incident or as to the source of the wet condition on that particular day. (SMF & RSMF ¶¶ 22-25.)

### D.     Other Relevant Evidence

Four of Defendant's employees provided deposition testimony, acknowledging that roof leaks were an ongoing issue at the store. (SMF & RSMF ¶¶ 28-29; PSMF & DRSMF ¶ 8; ECF Nos. 24-9 at 45:19-48:12, 24-10 at 37:25-39:3, 24-11 at 53:19-55:2, 24-12 at 51:20-53:10.) In addition to addressing the roof issues via the numerous repairs, Defendant utilizes a strategic maintenance plan, whereby employees routinely check for spills and other hazardous conditions. (SMF & RSMF ¶ 32.) Photographs taken by Witczak on the day of his site visit show that this maintenance plan included placing safety cones, paper towels, mops, and buckets around areas where water from the leaking roof had accumulated. (SMF & RSMF ¶¶ 35-37; PSMF & DRSMF ¶ 7; ECF No. 24-5 at 16–20.)

## II.    LEGAL STANDARD

### A.     Federal Rule of Civil Procedure 56: Summary Judgment

Pursuant to Rule 56, "[s]ummary judgment is proper when, viewing the evidence in the light

4

most favorable to the nonmoving party and drawing all inferences in favor of that party, there is no genuine issue of material fact and the moving party is entitled to judgment as a matter of law." *Auto-Owners Ins. Co. v. Stevens & Ricci Inc.,* 835 F.3d 388, 402 (3d Cir. 2016) (citing Fed. R. Civ. P. 56(a)). "A fact is material if – taken as true – it would affect the outcome of the case under governing law." *M.S. by & through Hall v. Susquehanna Twp. Sch. Dist.*, 969 F.3d 120, 125 (3d Cir. 2020) (citing *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986)). "And a factual dispute is genuine 'if the evidence is such that a reasonable jury could return a verdict for the nonmoving party.'" *Id.*

## III. DISCUSSION

Defendant moves for summary judgment as to Ms. Glass's negligence claim, asserting that she has failed to establish that Defendant had actual or constructive notice of the hazardous condition – a wet floor – that caused Ms. Glass to slip and fall. (ECF No. 24-1.) Defendant highlights that Ms. Glass is the only fact witness with respect to the incident, that she did not contemporaneously report the incident, and that she could not identify the liquid upon which she slipped, its source, or how long it had been present. (*Id.* at 15.) In opposition, Plaintiffs argue that the record evidence is sufficient to raise a genuine dispute of material fact as to whether Defendant had notice of the wet floor. (ECF No. 25 at 20-24.) Specifically, Plaintiffs point to the inclement weather on the day of the incident, the soiled condition of the wet substance upon which Ms. Glass had slipped, and Defendant's faulty roofing system, as documented by Plaintiffs' expert. (*Id.* at 20-21.) As set forth in further detail below, because, based on the present record, a reasonable juror could conclude Defendant had constructive notice of the wet floor on which Ms. Glass slipped, summary judgment is unwarranted.

"The fundamental elements of a negligence claim are a duty of care owed by the defendant to the plaintiff, a breach of that duty by the defendant, injury to the plaintiff proximately caused by the breach, and damages." *Shields v. Ramslee Motors*, 240 N.J. 479, 487 (2020) (citing *Robinson v. Vivirito*, 217 N.J. 199, 208 (2014)). "Business owners owe to invitees a duty of reasonable or due

care to provide a safe environment for doing that which is within the scope of the invitation." *Nisivoccia v. Glass Gardens, Inc.*, 175 N.J. 559, 563 (2003) (citing *Hopkins v. Fox & Lazo Realtors*, 132 N.J. 426, 433 (1993)). "The duty of due care requires a business owner to discover and eliminate dangerous conditions, to maintain the premises in safe condition, and to avoid creating conditions that would render the premises unsafe." *Id.* "Owners of premises are generally not liable for injuries caused by defects of which they had no actual or constructive notice and no reasonable opportunity to discover." *Troupe v. Burlington Coat Factory Warehouse Corp.*, 129 A.3d 1111, 1114 (N.J. Sup. Ct. App. Div. 2016) (citing *Nisivoccia*, 175 N.J. at 563). Therefore, "[o]rdinarily an injured plaintiff . . . must prove, as an element of the cause of action, that the defendant had actual or constructive knowledge of the dangerous condition that caused the accident." *Nisivoccia*, 175 N.J. at 563. Because there is no direct evidence as to actual knowledge of the hazardous condition that caused Ms. Glass's fall, the narrow issue raised by Defendant's motion is whether a jury could reasonably find that Defendant had constructive notice of the condition.

"A defendant has constructive notice when the condition existed 'for such a length of time as reasonably to have resulted in knowledge and correction had the defendant been reasonably diligent.'" *Troupe*, 129 A.3d at 1114 (quoting *Parmenter v. Jarvis Drug Store, Inc.*, 138 A.2d 548, 550 (N.J. Sup. Ct. App. Div. 1957)). "Constructive notice can be inferred in various ways," including "[t]he characteristics of the dangerous condition giving rise to the slip and fall" or "eyewitness testimony" regarding the length of the condition's existence. *Id.*; *see also Goldsack v. Wal-Mart Stores, Inc.*, Civ. No. 16-5354, 2018 WL 4300124, at *2 (D.N.J. Sept. 6, 2018) ("Whether a reasonable opportunity to discover a defect existed will depend on both the character and duration of the defect." (quoting *Cozzens v. Wal-mart Stores E., LP*, Civ. No. 14-7150, 2016 WL 4680151, at *2 (D.N.J. Sept. 6, 2016))).

Here, the Court finds that Plaintiffs have raised a genuine dispute of material fact as to

6

whether Defendant had constructive notice of the wet floor on which Ms. Glass slipped and fell.

*First*, the record evidence demonstrates that there was rainfall on the day of the incident. (SMF & RSMF ¶ 3; PSMF & DRSMF ¶ 4.). Ms. Glass testified that it had rained earlier that day and that it was wet outside when she visited the Walmart store that evening. (ECF No. 24-4 at 10:20-11:11.) Witczak's expert report supports Ms. Glass's testimony as to the rain, noting that "data from weather station KEWR – Newark International Airport (approximately 13 miles from the accident site) indicated that the area was subjected to rainfall throughout the day of [Ms. Glass's] accident starting at 3:00 a.m., and heavy rains falling between 1:00 and 3:00 p.m." (ECF No. 24-5 at 3.)

*Second*, Ms. Glass testified that the wet substance upon which she slipped was in a prominent area of the store, in front of the registers and relatively close to the store entrance, looked to be "a decent size," and had "some tracks in it," including "footprints" and marks consistent with the wheels of a shopping cart. (ECF No. 24-4 at 13:9-21, 15:9-17:14.) According to Witczak, "[t]he floor surface in the area of the accident location was sloped between 0.1% to 0.5%, which would have allowed liquids to collect." (ECF No. 24-5 at 4.)

*Third*, Defendant's faulty roofing system, which resulted in frequent leaks, is well-documented. In the months surrounding the incident, invoices show that a roofing repair contractor visited Defendant's store at least seven times. (*Id.* at 2-3.) Witczak's site visit on October 29, 2020, revealed that Defendant's roofing issues persisted beyond that period. (*Id.* at 4.) Witczak's report documents several leaks from roof trusses that required, among other things, cones and buckets to demarcate the resultant hazardous conditions on the floor of the store. (*Id.* at 3, 16–20.) Witczak's report also notes that, while there was no active roof leak above the incident location on the day of the site visit, the roof truss above that area showed staining consistent with water damage. (*Id.* at 3, 14.) Additionally, in deposition testimony, Defendant's own employees readily acknowledged that roof leaks were an ongoing issue at the store. (SMF & RSMF ¶ 29; PSMF & DRSMF ¶ 8.) Viewed

7

in totality, a rational juror could conclude that Defendant had constructive notice of the hazardous condition that caused Ms. Glass's fall, particularly given the visibly soiled condition of the wet substance and Defendant's awareness that inclement weather frequently caused hazards in the store due to its leaky roof.

In support of its position, Defendant argues that there is no evidence in the record as to the length of time that the hazardous condition existed prior to Ms. Glass's fall or as to its definitive source. (ECF No. 24-1 at 15.) But a juror could reasonably find that the shopping cart track marks and footprints Ms. Glass observed in the wet substance are indicative of the length of time the hazardous condition existed. *See, e.g.*, *Jarvis Drug Store*, 138 A.2d at 551 (explaining that "[t]he dirtiness of the water tended to be corroborative of the length of time it lay on the floor"). Moreover, considering the combination of the inclement weather and Defendant's faulty roofing, a rational juror could conclude that Defendant should have been "especially vigilant" in monitoring the store for hazards that day. *See Yazujian v. PetSmart*, Civ. No. 13-06202, 2016 WL 4408817, at *9 (D.N.J. Aug. 16, 2016). Further, the incident occurred in a highly trafficked area of the store, near the checkout registers, on a slightly sloped floor. (SMF & RSMF ¶¶ 4-5; ECF No. 24-5 at 3-4.) As such, "a juror could find that reasonable diligence was not exercised when [Defendant] failed to discover the hazard." *Betancourt v. Home Depot U.S.A., Inc.*, Civ. No. 16-07255, 2018 WL 3954854, at *5 (D.N.J. Aug. 16, 2018). Similarly, with respect to the source of the wet substance, Plaintiffs have presented enough evidence for a jury to reasonably infer either that Defendant's leaky roof was the cause of the hazardous condition, or, at the very least, that the faulty roof made a hazardous condition,

such as the wet floor Ms. Glass encountered, considerably more likely during inclement weather.[5] As noted above, Witczak observed stains consistent with water damage directly above the incident site, documented active roof leaks in the vicinity of incident site, and found that the slope of the floor at the incident site could cause liquids to accumulate.[6] (ECF No. 24-5 at 3-4.)

Under such circumstances, it is "for [the jury] to say whether the wet condition, inferably the cause of the slipperiness, had lasted for such a period of time that reasonable attention thereto would have both apprised defendant of the danger to its invitees and led to the remedying thereof." *Jarvis Drug Store*, 138 A.2d at 550. "The period of time sufficient to prove a defendant's constructive knowledge also depends on the characteristics of and surrounding the dangerous condition," and "[a]gain, this is an issue of fact generally left for the jury's determination." *Yazujian*, 2016 WL 4408817, at *9. Given the rainfall that occurred on the day of the incident, the soiled condition of

---

[5] Although Defendant emphasizes the purported lack of evidence as to the definitive source of the wet substance, this argument ultimately relates to the mode-of-operation rule, which is not directly at issue here. The mode-of-operation rule is "a special application of foreseeability principles in recognition of the extraordinary risks that arise when a defendant chooses a customer self-service business model" and courts "have consistently denied plaintiffs' requests for a mode-of-operation charge in the absence of any nexus between the self-service aspect of defendant's business and the plaintiff's injury." *Prioleau v. Ky. Fried Chicken, Inc.*, 223 N.J. 245, 261-62 (2015). However, the principal inquiry in assessing constructive notice is the length of time the hazardous condition existed. Even where the exact source of the hazardous condition is in question, summary judgment is unwarranted where there is a genuine dispute of fact as to whether the defendant should have, nonetheless, been aware of the hazard. *See Bolchune v. Shop-Rite Supermarkets, Inc.*, 2016 WL 4699172, at *4 (N.J. Sup. Ct. App. Div. Sept. 8, 2016) ("Assuming the jury concludes that there was a foreign substance which caused plaintiff to slip and fall, the jury will then need to determine if the foreign substance was present long enough to have resulted in knowledge and correction had the defendant been reasonably diligent." (internal quotation marks and citation omitted)).

[6] Defendant repeatedly highlights that Witczak did not offer any opinion regarding whether the wet floor on which Ms. Glass slipped was definitively due to the leaky roof or as to Defendant's constructive notice of the wet floor. (ECF No. 24-1 at 17-18; ECF No. 26 at 3-4.) But merely because Witczak does not opine on those issues hardly forecloses a reasonable fact-finder from utilizing the details of Witczak's report and testimony to conclude Defendant had constructive notice. Indeed, Witczak's report and testimony are one aspect of the record, which must be considered in connection with the evidence as whole, including Ms. Glass's testimony.

9

the wet substance, and Defendant's documented awareness of its faulty roofing system, a jury could rationally find that these facts required Defendant "to be especially vigilant in warning customers, detecting puddles, and cleaning them up." *Id.* Viewing the record before the Court in the light most favorable to Plaintiffs, a genuine issue of fact exists as to Defendant's constructive notice of the relevant hazardous condition. Summary judgment in Defendant's favor is, therefore, unwarranted.

### IV. CONCLUSION

For the foregoing reasons, Defendant's Motion for Summary Judgment (*see* ECF No. 24) is **DENIED**. An appropriate Order follows.

Dated: June 28, 2023

_____
**GEORGETTE CASTNER**
**UNITED STATES DISTRICT JUDGE**